UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROLINA FONTAINE,

        Plaintiff,

-against-

THE PERMANENT MISSION OF CHILE TO THE
UNITED NATIONS; CRISTIÁN BARROS; CARLOS
OLGUÍN; ERNESTO GONZALEZ,

        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/17/2020

17 Civ. 10086 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Carolina Fontaine, alleges that she was discriminated against, sexually harassed, and retaliated against for reporting those abuses while employed at the Permanent Mission of Chile to the United Nations (the "Permanent Mission"). Compl. ¶¶ 1, 13, 69–140, ECF No. 96. Now before the Court is a suggestion of immunity and motion to dismiss filed by Defendants— the Permanent Mission, and Ambassador Cristián Barros, Chile's Permanent Representative to the United Nations; Ambassador Carlos Olguín, Chile's former Deputy Permanent Representative to the United Nations; and Ernesto Gonzalez, the Permanent Mission's Chief of Administration (together, the "Individual Defendants"). ECF No. 105; Compl. ¶¶ 2–5.

    For the reasons that follow, the Court concludes that the Permanent Mission waived its sovereign immunity with respect to this action, but that the Individual Defendants are all protected by diplomatic immunity. Accordingly, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts are taken from the complaint and are presumed to be true for the purposes of determining the Court's subject matter jurisdiction. *Brady v. Goldman*, No. 16 Civ. 2287, 2017 WL 111749, at *2 (S.D.N.Y. Jan. 11, 2017), *aff'd*, 714 F. App'x 63 (2d Cir. 2018).

In May 2015, Plaintiff interviewed with Carlos Olguín and other staff of the Permanent Mission for the position of Secretary of General Duties. Compl. ¶ 13. The job involved "applying for and obtaining access cards to UN buildings for diplomatic and administrative personnel," "preparing and dispatching the [Permanent Mission's] diplomatic bag," "obtaining State Department cards for staff," "registering and obtaining license plates for [the Permanent Mission's] vehicles," "obtaining accreditations for students who completed internships at [the Permanent Mission]," "obtaining and renewing visas for diplomatic and administrative personnel," "purchasing office supplies, making minor repairs to [the Permanent Mission's] offices," and "collaborating on Spanish/English secretarial work for Mission officials." Id. ¶ 16.

In Plaintiff's interview, Olguín asked her "if she was married, why she was getting divorced, where her ex-husband was from, what her ex-husband did for a living, and where he lived precisely." Id. ¶ 13. Plaintiff felt uncomfortable, but at the conclusion of the interview she was nonetheless hired, starting in July 2015. Id. ¶¶ 14–15. Her employment contract (the "Contract") set out her duties, hours, and pay, and provided, "For all legal purposes, this contract shall be governed by the current legislation of the United States." Translated Contract at 2, ECF No. 106-6.

Plaintiff alleges that during her employment at the Permanent Mission, Olguín repeatedly made public jokes that she was dating her supervisor, made lewd comments about other employees in her presence, and once, after giving her and other women in the office hand lotion as a holiday gift, stated that he could apply the lotion to her. Compl. ¶¶ 19–25, 28. She also claims that Olguín singled her out for harsh treatment. Id. ¶¶ 30–35. She further alleges that both her immediate supervisor, Ernesto Gonzalez, and the head of the Permanent Mission, Cristián Barros, tolerated Olguín's behavior, and retaliated against her in the workplace for complaining about it. Id. ¶¶ 26–27, 37, 39, 41–43.

Plaintiff eventually filed a charge with the Equal Employment Opportunity Commission and complained to the Chilean Ministry of Foreign Affairs. *Id.* ¶¶ 47, 49. She alleges that once she did so, Barros, Olguín, and Gonzalez treated her coldly, stripped her of work assignments, effectively barred her from a workplace social event by prohibiting her from bringing her daughter when they knew she did not have access to childcare, and ultimately fired her. *Id.* ¶¶ 50–54, 61. She alleges that after her termination, the Permanent Mission's staff delayed paying her vacation time and providing her final paycheck. *Id.* ¶¶ 62–64.

In August 2017, Plaintiff began working at a bank in New York City. *Id.* ¶ 66. On January 6, 2018, the bank's human resources department received a letter (the "Letter") stating:

> It has come to my attention that Mrs. Carolina Fontaine works in your institution. I would like to notify you that this individual created major disruption in our organization to the point that many people suffered the consequences of her lies and slander. I join an article from the biggest newspaper in Chile that reported the problem in its pages. Be very weary. Sincerely.

*Id.* ¶ 67. She alleges on information and belief that "Barros, . . . Olgu[í]n and[/]or . . . Gonzalez wrote and sent the anonymous letter." *Id.*

## DISCUSSION

Plaintiff brings claims for sex discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* Compl. ¶¶ 69–132. She also brings a common law claim for intentional infliction of emotional distress against the Individual Defendants based on the Letter. *Id.* ¶¶ 133–140.

Defendants argue that Plaintiff's claims against the Permanent Mission are barred by sovereign immunity, and that her claims against the Individual Defendants are barred by their diplomatic immunity. Def. Mem. at 9–24, ECF No. 105. Both arguments implicate the Court's

3

subject matter jurisdiction. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."); *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019) ("Diplomatic immunity is a matter of subject matter jurisdiction.").

I. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) [of the Federal Rules of Civil Procedure] when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks and citation omitted). In reviewing a Rule 12(b)(1) motion, the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

II. Claims Against the Permanent Mission

The Court's jurisdiction over claims against the Permanent Mission is governed by the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. § 1602 *et seq*. "The FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007) (internal quotation marks, citation, and alteration omitted). "A foreign state is presumptively immune from the

jurisdiction of United States courts; unless a specified exception to the FSIA applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 107 (2d Cir. 2012) (internal quotation marks, citation, and alterations omitted); *see* 28 U.S.C. § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."). "A foreign state's permanent mission to the United Nations is indisputably the embodiment of that state," and is "entitled to rely on the defense of sovereign immunity unless an exception to the FSIA applies." *USAA Cas. Ins. Co.*, 681 F.3d at 107 (internal quotation marks and citation omitted).

Plaintiff argues that the Permanent Mission waived its sovereign immunity, and so the Court may exercise jurisdiction under 28 U.S.C. § 1605(a)(1). Pl. Opp. at 8–13, ECF No. 107. That section provides for a waiver of immunity under the FSIA when "the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1). A waiver should be implied only in "circumstances in which the waiver was unmistakable, and courts have been reluctant to find an implied waiver where the circumstances were not . . . unambiguous." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991); *see also Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2d Cir. 1993) (holding that an implied waiver of sovereign immunity "will not be implied absent strong evidence of the sovereign's intent").

"Waiver of immunity may be implied in cases where a foreign state has agreed to arbitration in another country, or agreed that the law of a particular country should govern a contract . . . ." *Kern v. Oesterreichische Elektrizitaetswirtschaft Ag*, 178 F. Supp. 2d 367, 374 (S.D.N.Y. 2001) (citing *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243

5

(2d Cir. 1996)).  Plaintiff argues that the Permanent Mission waived its sovereign immunity based on the provision in the Contract that states:  "For all legal purposes, this contract shall be governed by the current legislation of the United States," (the "Choice of Law Clause").  Translated Contract at 2; *see also* Original Contract at 3, ECF No. 106-6 ("Para todos los efectos legales, el presente contrato se regirá por la legislación vigente en los Estados Unidos de Norteamérica.").  Defendants argue, however, that any waiver implied by contract's choice of law provision must be limited to contract claims, and cannot extend to non-contract causes of action.  Def. Mem. at 12–13; Reply at 10–14.

The Court is not aware of any authority in the Second Circuit that has addressed the question of whether an implied waiver of sovereign immunity in an employment contract is limited to contract claims, or should apply to claims brought under other employment laws.  The most similar case is *Kim v. Korea Trade Promotion-Investment Agency*, 51 F. Supp. 3d 279 (S.D.N.Y. 2014).  In *Kim*, the plaintiff alleged violations of the federal Age Discrimination in Employment Act, the NYSHRL, and the NYCHRL against a nonprofit agency of the Korean government established under Korean law.  *Id.* at 281.  The plaintiff argued that the agency had implicitly waived its immunity under the FSIA based on evidence that it directed its overseas offices to have local law govern employment contracts and related disputes, and provided employees with a handbook stating that they were protected by the anti-discrimination laws of the United States during the course of their employment.  *Id.* at 285.  The court nonetheless held that the plaintiff had not demonstrated an unambiguous and unmistakable waiver of sovereign immunity, because the employee handbook—which was incorporated into the plaintiff's employment contract—stated "in all capital and bold letters, on the very first page," that "NOTHING HEREIN IS INTENDED AS A WAIVER OF [THE AGENCY'S] SOVEREIGN IMMUNITY TO SUIT OR CLAIMS IN ANY SUCH COURT OR AGENCY."  *Id.*  In light of

that express disclaimer of waiver, the court determined that it could not find that the agency had unmistakably consented to be sued in United States courts. *Id.* at 285–86.

But unlike in *Kim*, the Contract in this case contains no disclaimer of the Permanent Mission's intent to waive its sovereign immunity. Nothing qualifies the Choice of Law Clause's expansive statement that the "current legislation of the United States" shall govern the contract "for all legal purposes." Translated Contract at 2.

Courts outside the Second Circuit have held that similar contractual provisions constitute an implied waiver of immunity under the FSIA that extends not only to contract claims, but also to other claims arising out of the contractual relationship, including employment discrimination. For example, in *Ashraf-Hassan v. Embassy of France in the United States*, the United States District Court for the District of Columbia held that an employee of the French embassy could pursue employment discrimination claims under Title VII based on a clause in her employment contract which provided, "This document relies upon local law for its application." 40 F. Supp. 3d 94, 101 (D.D.C. 2014), *aff'd on other grounds*, 610 F. App'x 3 (D.C. Cir. 2015). Noting that the choice of law clause was "not subject to any limitation or reservation," the court reasoned that it should be read to imply that the defendant "assumed obligations to abide by U.S. law— including Title VII—in its employment relationship with [the plaintiff] and, accordingly, waived its right to assert immunity for any dispute arising therefrom." *Id.*

Similarly, in *Ghawanmeh v. Islamic Saudi Academy*, the court permitted an employee of a school operated by the Kingdom of Saudi Arabia to proceed with claims under Title VII and the Family and Medical Leave Act based on a clause that stated: "All disputes under this Agreement and in the interpretation or validity of any provision, shall be governed by the laws of the Commonwealth of Virginia." 672 F. Supp. 2d 3, 9 (D.D.C. 2009). The court explained that under long-established law, "there can be no more obvious and implicit waiver of sovereign

7

immunity than the sovereign's express intent to subject itself to the jurisdiction of a foreign court as demonstrated by a choice of law clause within a contract." *Id.*

The Court agrees with that reasoning. Given the longstanding rule that a waiver of sovereign immunity can be implied from a contract's choice of law provision, the inclusion of an unqualified statement in the Contract that, "[f]or all legal purposes, this contract shall be governed by the current legislation of the United States" is strong evidence of the Permanent Mission's intent to waive immunity. Were that their intent, the parties could have inserted a proviso stating that the Permanent Mission did not intend to waive its immunity, or limiting the waiver to contract claims.

Moreover, Plaintiff points to evidence that Defendants understood the Choice of Law Clause to apply United States labor law to the parties' employment relationship. On August 23, 2017, apparently in response to a request by Plaintiff for two months' worth of compensation following her termination, a letter from the Chilean Ministry of Foreign Affairs stated, "your contract is governed by US law and . . . US law makes no provision for such compensation." ECF No. 106-10 at 3. In 2017, at least, the Chilean government appeared to believe that the Choice of Law Clause was intended to broadly subject Plaintiff's employment to United States law.

Defendants argue that the Choice of Law Clause was intended only to help interpret portions of the Contract that incorporated United States law, such as provisions requiring Plaintiff to pay United States taxes and inform her employer of any changes in her immigration status. Reply at 1–5, 13–14; *see* Letter from Carlos F. Cornejo, Director of Personnel, Ministry of Foreign Affairs, Republic of Chile, ECF No. 109-1. The Court appreciates the need for diplomatic missions to contractually obligate their employees to abide by United States law for the sake of reducing international tensions. But Defendants' argument that the Choice of Law

8

Clause is limited to that purpose is not consistent with that provision's language. The Contract states that United States law shall govern "this contract," not Plaintiff's obligations. In stating that the Contract would be "governed by" United States law, the Choice of Law Clause mirrors almost exactly the language that courts have long held effects an implied waiver of sovereign immunity. *See, e.g.*, *Shapiro*, 930 F.2d at 1017 ("With respect to implicit waivers, the courts have found such waivers in cases . . . where a foreign state has agreed that the law of a particular country should govern a contract." (citation omitted)). Furthermore, the Choice of Law Clause states that United States legislation shall govern "for all legal purposes." Such language indicates an intention to subject the entire contractual relationship to United States law—and, by implication, to submit disputes arising from that relationship to United States courts.

Accordingly, Defendants' motion to dismiss Plaintiff's claims against the Permanent Mission is DENIED.

### III.      Claims Against the Individual Defendants

"Diplomatic immunity in the United States is governed by the Vienna Convention on Diplomatic Relations" (the "VCDR"). *Broidy Capital Mgmt.*, 944 F.3d at 441; *see* The Vienna Convention on Diplomatic Relations, Apr. 18, 1961, *entered into force with respect to the United States* Dec. 13, 1972, 23 U.S.T. 3227. Under the VCDR, "current diplomatic envoys enjoy absolute immunity from civil and criminal process," and "former diplomatic envoys retain immunity only with respect to acts performed by such a person in the exercise of his functions as a diplomatic envoy." *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010) (internal quotation marks and citation omitted). In addition, the VCDR provides that "[m]embers of the administrative and technical staff of the mission" are entitled to the same immunities, "except that the immunity from civil and administrative jurisdiction of the receiving State . . . shall not extend to acts performed outside the course of their duties." VCDR Art. 37(2).

"The Diplomatic Relations Act of 1978, 22 U.S.C. § 254d, makes pellucid that American courts must dismiss a suit against anyone who is entitled to immunity under either the VCDR or other laws extending diplomatic privileges and immunities." *Brzak*, 597 F.3d at 113; *see also Broidy Capital Mgmt.*, 944 F.3d at 441 ("The Diplomatic Relations Act . . . incorporated the VCDR into U.S. law and repealed contradictory earlier legislation.").

A. Employment Discrimination

To the extent that Plaintiff asserts employment discrimination claims under Title VII, the NYSHRL, or the NYCHRL against the Individual Defendants, those claims are barred by diplomatic immunity.[1]

It is not disputed that Barros and Olguín were, at the time this suit was commenced, diplomatic envoys entitled to immunity under the VCDR. *See* Def. Mem. at 16–17; Pl. Opp. at 14; Statement of Interest of the United States of America at 10, ECF No. 20; Declaration of James B. Donovan, Minister Counselor for Host Country Affairs of the United States Mission to the United Nations ("Donovan Decl.") at 1–2, ECF No. 21. Accordingly, they were absolutely immune to civil process. *See United States v. Khobragade*, 15 F. Supp. 3d 383, 387 (S.D.N.Y. 2014) ("Courts in civil cases have dismissed claims against individuals who had diplomatic immunity at an earlier stage of proceedings, even if they no longer possessed immunity at the time dismissal was sought."). Plaintiff argues, however, that the alleged conduct falls into one of the narrow exceptions to diplomatic immunity codified at Article 31(1) of the VCDR. Pl. Opp. at 13–16. Specifically, she argues that the alleged employment discrimination constituted "[a]n

---

[1] The complaint does not make it entirely clear whether Plaintiff intends to assert employment discrimination claims against the Individual Defendants, or only against the Permanent Mission. Each of her eight employment discrimination claims begins with the header "Fontaine v. [Permanent Mission]," while her claim for intentional infliction of emotional distress has the header "Fontaine v. PR Barros, DPR Olgu[í]n, and Mr. Gonzalez." *See* Compl. at 18–30. The introduction to her complaint, however, indicates that that she is pursuing all of her claims against all of the defendants. *See id.* at 2. In the interest of clarity, the Court will address its subject matter jurisdiction over the employment discrimination claims as well as the intentional infliction of emotional distress claim.

action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." VCDR Art. 31(1)(c).

The Second Circuit has held that employment discrimination claims under Title VII, including claims of sexual harassment, fall within the scope of "functional immunity" afforded to former diplomatic envoys for "acts performed by such a person in the exercise of his functions." *Brzak*, 597 F.3d at 113 (internal quotation marks and citation omitted). The appeals court explained that claims of workplace discrimination "involve personnel management decisions falling within the ambit of the defendants' professional responsibilities." *Brzak*, 597 F.3d at 113; *see also Brzak v. United Nations*, 551 F. Supp. 2d 313, 320 (S.D.N.Y. 2008) ("The allegations of sexual harassment and indecent battery against [the defendant] are allegations of abuse of authority in the workplace. Whether [those] alleged acts were intended or perceived as sexual in nature may be relevant to their wrongfulness, but not to the determination of functional immunity." (internal quotation marks and citation omitted)).

Moreover, "[w]hile the precise contours of the phrase 'professional or commercial activity,' which is not defined in the VCDR, are unsettled, it is broadly understood to refer to trade or business activity engaged in for personal profit." *Broidy Capital Mgmt.*, 944 F.3d at 445. The harassment and retaliation Plaintiff alleges plainly did not occur in that setting. Accordingly, Barros and Olguín are immune to Plaintiff's claims.

Gonzalez is not a diplomatic envoy, but he is a member of the Permanent Mission's administrative staff, and as such is entitled to diplomatic immunity except for "acts performed outside the course of [his] duties." VCDR Art. 37(2).[2] Again, it is clear that Plaintiff's

---

[2] The State Department also represents that Gonzalez is entitled to immunity under the International Organizations Act of 1945, which provides that "[r]epresentatives of foreign governments in or to international organizations and officers and employees of such organizations shall be immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such representatives, officers, or employees except insofar as such immunity may be waived by the foreign government or international organization

11

employment discrimination claims arise from acts performed in the course of Gonzalez's duties at the Permanent Mission.

Accordingly, Defendants' motion to dismiss Plaintiff's employment discrimination claims against the Individual Defendants is GRANTED.

B. Intentional Infliction of Emotional Distress

As with Plaintiff's employment discrimination claims, Barros and Olguín are entitled to absolute immunity against Plaintiff's claim for intentional infliction of emotional distress. Plaintiff's allegations suggest, at most, a personal grudge arising out of her work at the Permanent Mission, which has nothing to do with any "trade or business activity engaged in for personal profit." *Broidy Capital Mgmt.*, 944 F.3d at 445.

Gonazalez is entitled to immunity so long as writing and sending the Letter was not an act "performed outside the course of [his] duties." VCDR Art. 37(2). Defendants argue that such immunity applies, because the Letter discusses Plaintiff's performance as an employee of the Permanent Mission and its effect on the Permanent Mission's perations. Def. Mem. at 18. The Court agrees. "When a court attempts to determine whether a defendant is seeking immunity with respect to acts performed by such a person in the exercise of his functions, the court must do so without judging whether the underlying conduct actually occurred, or whether it was wrongful." *Brzak*, 597 F.3d at 113. Regardless of whether writing or sending the Letter was appropriate, its subject matter fell squarely within Gonzalez's purview as an employee of the Permanent Mission.

Accordingly, Defendants' motion to dismiss Plaintiff's claim for intentional infliction of emotional distress is GRANTED.

---

concerned." 22 U.S.C. § 288d(b); *see* Statement of Interest of the United States of America at 11; Donovan Decl. at 3.

## CONCLUSION

For the foregoing reasons, Defendants' suggestion of immunity is well taken as to the Individual Defendants, but not as to the Permanent Mission. Accordingly, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Clerk of Court is directed to terminate the motion at ECF No. 105.

Finally, the Court notes that the docket contains an error in the spelling of this matter's caption. The Clerk of Court is, therefore, directed to amend the caption as styled above.

SO ORDERED.

Dated: August 18, 2020
      New York, New York

_____
ANALISA TORRES
United States District Judge